Glen L. Kulik  (SBN 082170)
Donald S. Gottesman (SBN 082208)
KULIK GOTTESMAN SIEGEL & WARE, LLP
15303 Ventura Boulevard, Suite 1400
Sherman Oaks, California  90067
Tel.:  (310) 557-9200; Fax:  (310) 557-0224
gkulik@kgswlaw.com; dgottesman@kgswlaw.com

Attorneys for Plaintiff
Aftermaster, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AFTERMASTER, INC.,<br>a Delaware corporation,<br><br>                Plaintiff,<br><br>  v.<br><br>INFINITY POWER AND CONTROLS, INC., a Wyoming corporation,<br><br>                Defendant. | CASE NO.:<br><br>**COMPLAINT FOR:**<br>1. **BREACH OF CONTRACT;**<br>2. **NEGLIGENCE**<br>3. **FRAUD**<br>4. **UNFAIR BUSINESS PRACTICE**<br><br>[DEMAND FOR JURY TRIAL] |

{00399655}

1

Plaintiff alleges:

## PARTIES

1. Plaintiff Aftermaster, Inc. ("AMI") is a publically traded corporation formed under the laws of the state of Delaware with its principal place of business located in Los Angeles, County, California.

2. Defendant Infinity Power and Controls, Inc. ("IPC") is a corporation formed under the laws of the State of Wyoming with its principal place of business located in Rock Springs, Wyoming.

3. At all times mentioned in this Complaint AMI and IPC were and are "merchants" as that term is defined in the Uniformed Commercial Code and the California Commercial Code.

## JURISDICTION AND VENUE

4. This court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.

5. Venue is proper pursuant to 28 U.S.C. §1391(a)(2) as this court is in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

## COMMON FACTUAL ALLEGATIONS

6. AMI is a leading audio technology company that develops and markets audio products that are sold worldwide.

7. AMI created and developed the "Aftermaster Pro" television audio remastering device, which has been sold in over 70 countries. The product clarifies and improves the sound that is heard on a television and makes the dialogue crisper and cleaner so it can be better heard and understood.

8. Until July 2017, AMI manufactured the Aftermaster Pro itself without any significant incident. Sales of the product were growing and the product was ultimately

purchased and sold by major retailers such as Amazon and Home Shopping Network ("HSN")..

9.  IPC is a manufacturer and supplier of industrial power control products. IPC learned of and was enamored with the Aftermaster Pro, so much so that it began buying the device from Aftermaster and re-selling it to the public for a higher price.

10. In or about July 2017, AMI engaged IPC to be the exclusive manufacturer of the Aftermaster Pro. A written manufacturing agreement was drafted but never finalized, but the parties started doing business together based on the material terms covered by their oral agreement which was confirmed in a series of emails and purchase orders sufficient to satisfy the statute of frauds.

11. AMI decided to enter into the manufacturing agreement based on oral representations in or about July 2017 from Bruce Pivic ("Pivic"), owner and Chief Executive Officer of IPC, made to Mark Depew, Senior Vice President of Finance of AMI, and Larry Ryckman, Chief Executive Officer of AMI, that IPC was an experienced and competent manufacturer, was well-qualified to produce the Aftermaster Pro, would comply with AMI's plans, specifications, and instructions for the manufacture of the product, and that the device IPC would produce would faithfully comply with AMI's guidelines and prototypes. The representations were made by Pivic in person at AMI's offices in California and Arizona and on the phone while Depew and Ryckman were in California.

12. Thus, in or about July 2017, AMI disclosed and provided to IPC the former's confidential plans and specifications for the manufacture of the Aftermaster Pro, along with the required component parts, packaging, installation instructions, warranty information, and consumer warnings. IPC began manufacturing the Aftermaster Pro for AMI according to the following terms: When AMI received an order from a customer, AMI would submit a purchase order to IPC, IPC would assemble and ship the goods to the customer, the customer would pay AMI, and IPC would invoice AMI at the rate of $90 per unit.

13. Following the foregoing course of conduct, between July 2017 and November 2018, IPC manufactured and distributed approximately 10,000 units of the Aftermaster Pro on AMI's behalf.

14. Within the first few months of the relationship, without AMI's approval, IPC began to unilaterally stop utilizing AMI-approved parts and switching to a cheaper circuit board that was unreliable and not properly tested. IPC then removed the power light and changed the shell to an inferior product. IPC replaced AMI's HDMI cable, which was to be included with every unit, for a much cheaper item, which caused a significant volume of AMI's Aftermaster Pro units to not operate properly. IPC also abandoned Aftermaster's packaging in favor of smaller and cheaper packaging. This was intended by IPC to reduce its cost to produce the product and increase its profits even though it was at the expense of the quality and reliability of AMI's product. The changes resulted in significant cost savings to IPC which they did not accurately disclose or credit in any way to AMI.

15. In addition, without AMI's knowledge or approval, IPC eliminated the instruction manual from the product box to save money. The manual contained the installation instructions. IPC also eliminated the warranty information and consumer warnings. In addition to failing to credit AMI for any of the savings, these changes resulted in a large number of consumer complaints as the purchasers did not know how to install the device. Without the consumer warnings, it put the buyers at risk of physical harm.

16. Also without AMI's knowledge or approval, IPC changed the power brick which plugs into the wall with a cheaper, "non-UL" approved product. Not only did this put the customers and retailers in jeopardy, but AMI's largest customer, HSN, will not accept any products if they are not UL approved.

17. Based on all of the inferior changes made by IPC, a high number of units were returned as defective. Hundreds of consumers complained of the units not working. AMI advised IPC on numerous occasions that it must immediately correct the quality and

reliability of the product because AMI's reputation was being damaged. IPC did nothing in response.

18. Due to the very high number of returns and complaints for the Aftermaster Pro, Amazon stopped carrying the product altogether which has caused enormous damage to AMI.

19. HSN experienced unusually high return rates of over 40%, primarily due to defective manufacturing by IPC. As a result, AMI could not sell any more Aftermaster Pro devices on HSN until it was proven that IPC had fixed the problems, but IPC failed to do so.

20. In November 2018, with the Aftermaster Pro business in shambles due to IPC's conduct, AMI terminated the relationship and had to shut down its production and sale of the Aftermaster Pro. Due to the time it took to locate and engage a new manufacturer, and for that manufacturer to commence production, which was a nine-month process, AMI has sustained significant losses and the value of its stock plummeted. AMI was also left with over 4000 defective units, with a retail value of over $750,000, that it cannot sell.

21. In 2018, AMI engaged in an aggressive online marketing campaign for the Aftermaster Pro. IPC took advantage of AMI's online marketing program between and sold approximately 1,000 Aftermaster Pro units that it owned at a retail price of $180.00 per unit, through a separate, independent account it set up on Amazon. IPC never paid its portion of the online marketing expenses in the sum of $185,000, which it owes to AMI at this time.

**FIRST CLAIM FOR RELIEF**

(Breach of Contract)

22. AMI realleges and incorporates by reference the allegations made above in Paragraphs 1 through 21 of this Complaint.

23. In or about 2003, AMI entered into the oral requirements contract with IPC ("Contract") within the meaning of Sections 2106(1) and 2306(1) of the California

Commercial Code, thereafter confirmed in writings including correspondence, purchase orders and invoices sufficient to satisfy the requirements of Section 2201(2) of the California Commercial Code.  Under the Contract, the parties agreed that IPC would be the exclusive manufacturer and distributor of the Aftermaster Pro and would produce and ship the product in a competent manner in accordance with the directions and specifications provided by AMI. In exchange, based on IPC's representations of its costs to produce the product, by Pivic made in person at AMI's offices and on the telephone to Depew and Ryckman in or about July 2017, AMI agreed to pay IPC the sum of $90 for each unit competently produced in accordance with AMI's directions and specifications.

24. The Contract was an agreement for the purchase and sale of goods and was thus subject to Article 2 of the California Commercial Code which supersedes general California contracts law in regard to such transactions.  Under Section 1201(3) of the California Commercial Code, an agreement means "the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing, usage of trade, and course of performance."

25. AMI performed every term and condition of the Contract to be performed on its part.

26. Commencing in or about August 2017, IPC breached the Contract by committing those acts which are described in paragraphs 14 to 21 hereof.

27. As a direct and proximate result of the breach of contract, AMI has been damaged in a sum which cannot presently be calculated with certainty but which is believed to exceed the sum of $10,000,000 according to proof at trial.

## SECOND CLAIM FOR RELIEF

(False Promise - Deceit)

28. AMI realleges and incorporates by reference each of the allegations made above in paragraphs 1 through 21 and 23 of this Complaint.

29. The promises made by IPC described in paragraph 11 and 23 hereof were false and known by IPC and Pivic to be false when made. When the promises were made

by IPC there was an intent to defraud, as IPC and Pivic knew and intended that IPC would substitute inferior components and eliminate certain important items when the product was made and shipped to customers, which affected product quality and reliability as described in paragraphs 11 to 21 and 23 of this Complaint, in order to reduce costs and increase profits for IPC. IPC intended to induce AMI's reliance on the false promises.

30. In reasonable reliance on the promises described in paragraph 28, AMI entered into the Contract with IPC, continued to do business with IPC for over a year, and continued to pay IPC $90 per unit which price was based on IPC's representation of the cost of producing and shipping the product that way it was supposed to be done per AMI's instructions. Had AMI known or suspected that IPC greatly inflated its costs to manufacture the Aftermaster Pro, did not have the required manufacturing expertise and never intended to perform the promises referenced in paragraphs 11 through 21 and 23 hereof, AMI would never have entered into the Contract or placed any orders with IPC.

31. IPC's false promises constituted fraud and deceit as proscribed by Section 1710(4) of the California Civil Code.

32. As a direct and proximate result of the fraud, AMI has been damaged in an amount which cannot presently be calculated with certainty but which is believed to exceed the sum of $10,000,000 according to proof.

33. The above conduct by IPC was committed with malice, fraud and oppression. As a result thereof IPC should be ordered to pay to AMI punitive damages under Section 3294 of the Civil Code in the amount of $25,000,000 or such other amount as may be determined at trial.

### THIRD CLAIM FOR RELIEF

(Unfair Business Practice)

34. AMI realleges and incorporates by reference each of the allegations made above in paragraphs 1 through 32 of this Complaint.

35. The above conduct by IPC as alleged in paragraphs 11 through 21, 23, and 29 through 33 of this Complaint constitutes unfair competition in violation of Section 17200 of the California Business and Professions Code. Specifically, IPC's conduct described in this Complaint constitutes unlawful, unfair, or fraudulent business practices and an attempt by IPC to obtain for itself the benefits of AMI's unique development know-how and its highly specialized Aftermaster Pro device by unfair or fraudulent means.

36. As a direct and proximate result of the unfair competition committed by IPC, AMI is entitled to restitution, injunctive relief, and such other remedies, if any, which are allowed under California law.

## FOURTH CLAIM FOR RELIEF

37. AMI realleges and incorporates by reference each of the allegations made above in paragraphs 1 through 25 of this Complaint.

38. In agreeing to be the exclusive manufacturer of the Aftermaster Pro product, IPC owed a duty to AMI to exercise reasonable care in the manufacture and shipping of the product which included the duty to produce products free of defects and according to the specifications and directions provided by AMI.

39. In committing the acts described in paragraphs 11 through 21 and 23 of this Complaint, IPC breached its duty to exercise reasonable care and was negligent. IPC knew or should have known that it could not fulfill the promises it made to AMI as described in those paragraphs. That negligence was and is the proximate cause of damage to AMI.

40. As a direct and proximate cause of IPC's negligence, AMI has been damaged in a sum which cannot be presented calculated with certainty but which is believed to exceed $10,000,000 according to proof at trial.

## PRAYER FOR RELIEF

Wherefore, AMI prays for judgment against IPC and all Defendants as follows:

FIRST CLAIM FOR RELIEF

A. For damages believed to exceed $10,000,000 according to proof;

B. For prejudgment interest at the maximum rate to the extent allowed by law;

SECOND CLAIM FOR RELIEF

A. For damages believed to exceed $10,000,000 according to proof;

B. For prejudgment interest at the maximum rate allowed by law;

C. For punitive damages of at least $20,000,000 or such other amount as is proven at trial;

THIRD CLAIM FOR RELIEF

A. For restitution, injunctive relief, and such other relief as is allowable under law;

FOURTH CLAIM FOR RELIEF

A. For damages believed to exceed $10,000,000 according to proof;

B. For prejudgment interest at the maximum rate to the extent allowed by law;

ON ALL CLAIMS FOR RELIEF

A. For costs of suit; and

B. For such other relief as the court deems appropriate.

DATED: July 2, 2019         KULIK GOTTESMAN & SIEGEL LLP

By: */s/ Glen L. Kulik*
Glen L. Kulik
Attorneys for Plaintiff
gkulik@kgswlaw.com

# DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Aftermaster, Inc. hereby demands a trial by jury on all issues raised by the pleadings in this case.

DATED: July 1, 2019

                                               KULIK GOTTESMAN & SIEGEL LLP

                                               By: */s/ Glen L. Kulik*
                                                          Glen L. Kulik
                                                          Attorneys for Plaintiff
                                                          gkulik@kgswlaw.com